UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## LETTER OPINION

December 20, 2011

William D. Wallach
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

    (*Attorney for Plaintiffs Promotion in Motion, Inc. and PIM Brands, LLC*)

Paul J. Dillon
Bloom Karinja & Dillon, P.C.
70 South Orange Avenue, Suite 240
Livingston, NJ 07039

    (*Attorney for Defendant Beech-Nut Nutrition Corporation*)

    **RE:**    **Promotion in Motion, Inc. v. Beech-Nut Nutrition Corporation**
           **Civ. No. 09-1228 (WJM)**

Dear Counsel:

    This matter comes before the Court on Defendant/Counter-Claimant Beech-Nut Nutrition Corporation's ("Beech-Nut's") motion for summary judgment.  Plaintiffs Promotion in Motion, Inc. and PIM Brands LLC's (hereinafter, collectively "PIM") oppose the motion.  For the reasons stated below, Defendant's motion is **GRANTED** in part and **DENIED** in part.

**I.      BACKGROUND**

PIM is a manufacturer of popular snack foods.  Defendant sells Beech-Nut branded foods to third parties.  In late 2007, the parties began discussions about producing a toddlers' all natural gummy fruit snack called Fruit Nibbles for retail under the Beech-Nut brand.[1]  Throughout the course of their dealings, the parties anticipated signing a two-year "Co-Pack" contract to govern their relationship.  However, the parties were unable to agree to certain terms, and no long-term agreement was signed.

Despite having no long-term contract in place, PIM produced a sample batch of Fruit Nibbles which met Beech-Nut's color, texture and "bite" specifications.  Based on approval of that sample, PIM began mass producing Fruit Nibbles in August 2008.  PIM continued production until at least November 11, 2008.  Through four signed Purchase Orders dated May 9, August 5, September 8, and October 13, 2008 (the "Purchase Orders"), Beech-Nut accepted and paid for approximately 230,000 cases of Fruit Nibbles.

Several provisions of those Purchase Orders bear on this matter:

> 1. Entire Agreement.  The terms and conditions set forth in [these orders] constitute the entire agreement between the parties . . . and supersede . . . all previous verbal or written representations, agreements and conditions [unless modified in writing and signed by all parties].
> . . . .
> 4.  Quality and Inspection. [PIM] warrants that the goods . . . furnished under the order will comply with the specifications, are fit for the purpose intended, merchantable and free from defects of material and workmanship and . . . [and upon] discovery of any defect, all rejections will be returned at [PIM's] risk and expense . . . [PIM] acknowledges and agrees that [Beech-Nut] shall be entitled to all warranties and remedies as provided by the Uniform Commercial Code ("U.C.C.").
> . . . .
> 17.  This purchase order shall be construed in accordance with the laws of the State of New York as such laws are applied to contracts made to be fully performed in New York.

(Kowalski Declar., Ex. 13.)

---

[1]      PIM had experience manufacturing a similar product under the Welch's "Fruit Snack" brand.

In September 2008, Beech-Nut received its first delivery of Fruit Nibbles, which it sold to third parties. Shortly thereafter, Beech-Nut began receiving hundreds of complaints about Fruit Nibbles.[2] Although it is unclear exactly how widespread the problems with the shipped Fruit Nibbles were, on December 5, 2008, Beech-Nut instituted a national product withdrawal of all PIM-manufactured Fruit Nibbles.[3]

From mid-January through February 2009, the parties discussed issues related to the product recall. Beech-Nut maintained that these problems were PIM's responsibility; PIM, in turn, denied responsibility and declined to accept Fruit Nibbles returns from Beech-Nut.[4] The parties also discussed relaunching Fruit Nibbles in Spring 2009, but understood that any future business relationship was predicated on resolving issues related to the recall. Ultimately, the parties did not resolve those issues and failed to "reach a co-packing or other contract relating to the prospective re-launch." (56.1 Statement ¶ 42.) On February 23, 2009, Beech-Nut advised PIM that it was going to use alternate suppliers for Fruit Nibbles.

On February 27, 2009, PIM sued Beech-Nut in Superior Court, asserting claims against Beech-Nut for breach of contract, breach of the implied covenant of good faith and fair dealing, and contract by estoppel.[5] On March 21, 2011, Beech-Nut removed this action to District Court, where it asserted counterclaims against PIM for negligence and for breaches of express and implied warranties under the U.C.C.

---

[2] A sampling of the complaints includes: "powdery coating, dried out product, shriveled appearance, moldy and wilted appearance, fermented odor, terrible smell, hard texture, choking hazard, funny taste, sour odor, wrinkled, raisin-like appearance, bitter taste, bad smell, covered with mold, horrible smell, green white, and grey coating, looks like dead toes, old, nasty, discolored, crusty, gross, rotten, stale, dry, difficult to chew, spoiled smell, horrid smell, disgusting, waxy taste, caused stomach ache, vomiting, and diarrhea, etc." (Stipulated Fact 34.)

[3] From the recall in December 2008, until Spring 2009, Beech-Nut had no Fruit Nibbles product to sell.

[4] In U.C.C. terms, Beech-Nut attempted to revoke its acceptance of the goods. *See* U.C.C. § 608(1) ("The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it.")

[5] Counts One, Two, and Three assert the three respective claims by Promotion in Motion, Inc. against Beech-Nut; in Counts Four, Five, and Six, PIM Brands LLC reasserts the same claims.

Presently, Beech-Nut moves for summary judgment dismissing all of PIM's claims and granting all of its counterclaims. Additionally, Beech-Nut now moves for an award of $3,454,140.45 for breach of warranty damages recoverable under the U.C.C., and for an award of $1,659,601.00 for lost profits on future sales caused by PIM's negligent manufacture of Fruit Nibbles.[6]

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is proper where the materials of record show "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). In the present motion, the Court must consider all facts and their reasonable inferences in the light most favorable to PIM, the non-moving party. Summary judgment will be improper if "the evidence is such that a reasonable jury could return a verdict for [PIM]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B.   The Terms of the Purchase Orders Govern the Rights and Liabilities of the Parties for All Fruit Nibbles PIM Shipped to Beech-Nut

Beech-Nut purchased approximately 230,000 cases of Fruit Nibbles from PIM, as memorialized by the signed Purchase Orders. As a matter of law, the Court finds that the Purchase Orders are valid and enforceable contracts.[7]   U.C.C. § 2-201; *Kay-Bee Toys Corp. v. Winston Sports Corp.*, 214 A.D. 2d 457, 458 (N.Y. App. Div. 1995) ("purchase orders may create a binding contract").

Pursuant to the Purchase Orders' express terms, they "constitute the entire agreement between the parties . . . and supersede . . . all previous verbal or written representations, agreements and conditions [unless modified in writing and signed by all parties]." (¶ 1.)  *See, e.g. Montefiore Medical Center v. Crest Plaza LLC*, 2009 WL 1675994, at *12 (N.Y. Sup. Ct. 2009) (noting that New York courts strictly enforce merger clauses and denying admission of contradictory evidence where merger clause stated that lease alone fully expressed the parties' agreement, and could not be modified without a signed writing).

---

[6]   Recovery of lost profits on future sales are not recoverable under the U.C.C.

[7]   The last purchase order was signed on October 4, 2008. No PIM-manufactured Fruit Nibbles were ordered by Beech-Nut after that date.

Pursuant to the Purchase Orders, PIM warranted that all shipped Fruit Nibbles would "comply with the specifications, [be] fit for the purpose intended, merchantable and free from defects of material and workmanship." (¶ 4.) Because the Purchase Orders were never modified by a subsequent signed writing, the terms therein govern the rights and obligations of PIM and Beech-Nut with respect to the 230,000 cases of Fruit Nibbles purchased by Beech-Nut.[8] Accordingly, the Court finds that PIM bears the "risk and expense" for any defective Fruit Nibbles purchased by Beech-Nut. (¶ 4.)

### C. Whether PIM's Breaches Constituted "Substantial Impairment" is a Disputed Factual Issue Which Precludes Awarding Beech-Nut Breach of Warranty Damages on Summary Judgment

It is undisputed that shortly after placing Fruit Nibbles on the market, Beech-Nut began receiving hundreds of complaints about the quality of the product. Thereafter, Beech-Nut determined that all shipped Fruit Nibbles were unsaleable and instituted a national recall of the product. After the recall, Beech-Nut attempted to revoke its acceptance of all Fruit Nibbles by returning them to PIM. However, PIM declined to accept their return.

Under the U.C.C., Beech-Nut may have been within its rights to revoke its acceptance of all shipped Fruit Nibbles. However, this right only arises when a products' non-conformity substantially impairs the value of the whole shipment. U.C.C. § 2-608(1). Substantial impairment is a factual issue. *SCD RMA, LLC v. Farsighted Enterprises, Inc.*, 591 F. Supp. 2d 1131, 1138 (D. Hi. 2008) (*citing* 3 Williston on Sales § 25-15); *Hubbard v. UTZ Quality Foods, Inc.*, 903 F. Supp. 444, 451-52 (W.D.N.Y. 1995) (noting that "whether goods conform to contract terms is a question of fact" and holding a trial to decide if potatoes failed to meet buyer's contracted-for color specifications and whether such failure constituted a substantial impairment of the installments); *Glennville Elevators , Inc. v. Beard*, 384 S.C. 335, 338 (S.C. Ct. App. 1985) (whether delivery of

---

[8] In spite of unequivocal warranty language in ¶ 4, PIM now wishes to introduce extrinsic evidence demonstrating that they did not provide any warranties to Beech-Nut for the shipped Fruit Nibbles. (Pl.'s Br. in Opp. to Def.'s Mot. for Summ. J. 28, ECF No. 31-1.) Admission of such evidence, which seeks to directly contradict the warranty language in the Purchase Orders, is barred by the Parole Evidence Rule. U.C.C. § 2-202*; Sinstershoe, Inc. v. Banker Trust Company*, 569 N.Y.S. 2d 333, 336 (N.Y. 1991) (holding that confirmation slip sent by bank to manufacturer, which signed and returned it, was intended to be final expression of parties' agreement as to terms stated and thus, U.C.C. § 2-202 precluded manufacturer from producing parole evidence of contradictory terms).

under-weight and under-moist corn bushels substantially impaired value of whole contract is a question of fact); *RIJ Pharmaceuticals v. IVAX Pharmaceuticals, Inc.*, 322 F.Supp.2d. 406, 416 (S.D.N.Y. 2004) (declining to determine on summary judgment that shipments of medication were non-conforming as a question of fact).

Turning to the facts in this case, it is clear that at least some of the shipped Fruit Nibbles breached PIM's express warranties.[9] However, there is also evidence suggesting that a sizeable portion of the Fruit Nibbles conformed with Beech-Nut's specifications. (Wallach Cert. Ex. J, (Nov. 21, 2008 e-mail from Shen-Young Chang stating that "products [shipped to Safeway] very good at this stage."); Wallach Cert., Ex. L. (Dep. of Frank McSorley at 56:4-7 stating that "there was many product even up until the last case that I produced for them that . . . was very good.").) Moreover, the record lacks evidence unequivocally quantifying the percentage of the product that was defective. Nor does it show just how substantial the variance was between the shipped Fruit Nibbles and the sample produced in August 2008.

On these facts, and affording all favorable inferences to PIM, the Court finds that a reasonable jury could conclude that hundreds of complaints about non-conforming Fruit Nibbles in 230,000 cases did not substantially impair the value of the entire shipment to Beech-Nut such that it was entitled to revoke acceptance of all Fruit Nibbles. *See Urquhart v. Philbor Motors, Inc.*, 780 N.Y.S.2d 176, 178 (N.Y. App. Div. 2004) (summary judgment that vehicle conformed with terms of sales contract was improper where plaintiff raised triable issue that vehicle designation substantially impaired its value to plaintiff). Accordingly, Beech-Nut's motion for summary judgment that it be awarded $3,454,140.45 in U.C.C. damages arising from PIM's contractual breaches - implicitly predicated on the Court making a factual determination that those breaches substantially impaired the value of the whole shipment - will be **DENIED**.

> **D.     Beech-Nut's Claim for Monetary Recovery of Non-U.C.C. Damages Premised on a Separate Negligence Theory is Barred by the Economic Loss Rule**

Beech-Nut additionally moves for a declaration that PIM negligently manufactured Fruit Nibbles.[10] Beech-Nut further moves for an award of $1,659,601.00, which

---

[9]     Because breaches are cumulative, at this time, the Court will not address Beech-Nut's assertions that PIM breached agreed-upon packaging specifications.

[10]    To the extent Beech-Nut asserts that PIM's negligence falls outside the scope of their contractual relationship, the law of the forum where the act was committed governs. In this

6

represents the profits Beech-Nut lost when it had no Fruit Nibbles to sell for five months after it stopped buying them from PIM. Such recovery is not available to Beech-Nut under the U.C.C. As such, the Economic Loss Rule, ("E.L.R."), which limits a commercial buyer's recovery for foreseeable damages at the core of a commercial contract[11] to those remedies available under the U.C.C., bars Beech-Nut from receiving additional recovery for its separate tort claim. *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 561 (1985); *Paramount Aviation Corp v. Agusta*, 288 F.3d 67 (3d Cir. 2002); *Travelers Indemnity Company v. Damman & Co., Inc.*, 592 F.Supp.2d 752, 762 (D.N.J. 2008); (E.L.R. barred buyer's separate tort claim against the seller of defective vanilla beans). Accordingly, Beech-Nut's counterclaim seeking recovery for future lost profits caused by PIM's negligent manufacture of Fruit Nibbles will be **DENIED**.[12]

### E. Dismissal of PIM's Complaint is Proper Because the Undisputed Facts Show PIM Cannot Establish a *Prima Facie* Case for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, or Contract by Estoppel

As explained *supra*, the rights and obligations of Beech-Nut and PIM for all shipped Fruit Nibbles are governed by the terms of the Purchase Orders. There is no

---

case, the alleged negligent manufacturing occurred at PIM's New Jersey facilities. Accordingly, the Court relies on New Jersey law. *Nubenco Enterprises v. Inversiones Barberena*, S.A., 963 F. Supp. 353, 373-74 (D.N.J. 1997). The parties briefs on the issues, which fail to cite to New York cases when discussing the Economic Loss Rule appear to implicitly recognize this. Nonetheless, the Economic Loss Rule is similarly applied under New York law. *See, e.g., Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.* 244 F.R.D. 204, 220 (S.D.N.Y. 2007).

[11]   Clearly, the parties understood there were risks that bad Fruit Nibbles would be produced. This is exactly the type of foreseeable damage at the core of the commercial contract whose recovery is limited by the E.L.R.

[12]   Beech-Nut's attempts to show that the E.L.R. does not apply to this case prove unconvincing. It first argues that the Rule is inapplicable because the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 342(a), creates a separate and independent tort duty. The Court is at pains to see why that is so as § 342(a) defines "adulterated food." Beech-Nut further asserts that PIM's superior knowledge and skill created an independent tort duty precluding use of the E.L.R. That argument also fails. *See Ferrell v. America's Dream Homes, Inc.*, 2010 WL 3075578, at *11 (N.J. Sup. Ct. App. Div. 2010) (trial court properly applied E.L.R. on summary judgment to dismiss Plaintiff's negligence claim rooted in theory that builder's experience created an independent tort duty.)

other signed agreement between the parties. It is undisputed that PIM produced and shipped Fruit Nibbles to Beech-Nut despite having no long-term agreement in place. Moreover, the parties agree that they never entered into a contract after the product recall. Based on these facts, the Court finds that, excluding the Purchase Orders, there was no "meeting of the minds" sufficient to create an enforceable sales contract governing additional transactions between the parties.[13] *AMCAN Holdings v. Canadian Imperial Bank of* Commerce, 894 N.Y.S.2d 47, 50 (N.Y. Sup. Ct. App. Div 2010); *see also RIJ Pharmaceuticals v. IVAX Pharmaceuticals, Inc.*, 322 F.Supp.2d 406, 416 (S.D.N.Y. 2004) (merchants' unwritten arrangement that seller would keep additional inventory to fill buyer's orders on a timely basis did not constitute sales agreement for continuing purchase of products).

Because PIM does not allege that Beech-Nut breached the terms of the Purchase Orders, and those are the only enforceable contracts between the parties, Counts One and Four of PIM's complaint alleging breach of an express contract must be dismissed. Similarly, because a *prima facie* claim of breach of the implied covenant of good fair and fair dealing is predicated upon the existence of such a contract, Counts Two and Five of PIM's complaint must similarly be dismissed. *American-European Art Assoc. v. The Trend Gallaries, Inc.*, 641 N.Y.S.2d 835, 836 (N.Y. App. Div. 1996).

Finally, PIM's claims alleging contract by estoppel will also be dismissed. To establish a *prima facie* claim of contract by estoppel, PIM must show a clear and definite promise by Beech-Nut, made with the expectation that PIM would rely on that promise, and that PIM relied on that promise to its detriment. *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000). The record fails to show an enforceable promise by Beech-Nut to purchase additional Fruit Nibbles beyond those in the Purchase Orders. Even assuming such a promise existed, it is undisputed that the parties understood numerous issues needed to be resolved regarding the shipped Fruit Nibbles prior to the parties engaging in further commercial dealings. Thus, any reliance by PIM on such a statement would be unreasonable. *See G & F Assoc. Co. v Brookhaven Beach Health Related Facility*, 671 N.Y.S.2d 510, 511 (N.Y. S. Ct. App. Div. 1998) (granting summary judgment on plaintiff's promissory estoppel claim because the alleged oral promise was conditional, and thus any reliance by plaintiff was therefore unreasonable.) As such, Counts Three and Six of PIM's, complaint will also be dismissed. Accordingly, Beech-Nut's motion seeking dismissal of PIM's complaint in its entirety will be **GRANTED**.

---

[13] Although not singularly dispositive of this issue, New York's Statute of Frauds generally requires any contract for the sale of goods over $500.00 to be in writing to be enforceable. U.C.C. § 2-201(1).

### III.     CONCLUSION

Based on the foregoing, Beech-Nut's motion for summary judgment will be **GRANTED in PART** and **DENIED in PART**.  Specifically, those portions of Beech-Nut's motion seeking dismissal of all counts in PIM's complaint will be **GRANTED**.  Furthermore, because factual issues remain as to whether PIM's breaches constitute substantial impairment, those portions of Beech-Nut's motion seeking recovery of damages from those breaches will be **DENIED**.  Finally, those portions of Beech-Nut's motion seeking additional recovery for future lost profits caused by PIM's negligent manufacture of Fruit Nibbles will be **DENIED** and Beech-Nut's Fourth Counterclaim will be dismissed.


                              /s/ William J. Martini
                              **WILLIAM J. MARTINI, U.S.D.J.**