UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PROMOTION IN MOTION, INC., and PIM BRANDS, LLC,<br><br>        Plaintiffs,<br><br>    v.<br><br>BEECH-NUT NUTRITION CORPORATION, a HERO GROUP COMPANY,<br><br>        Defendant. | Civ. No. 09-1228<br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

**WILLIAM J. MARTINI, U.S.D.J.:**

    This matter comes before the Court on Plaintiffs Promotion in Motion, Inc. and PIM Brands, LLC's (collectively, "PIM's") motion for reconsideration of the Court's December 20, 2011 Letter Opinion and Order (ECF Nos. 34, 35) pursuant to Local Civil Rule 7.1(i). For the reasons stated below, PIM's motion for reconsideration is **DENIED**.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    This matter concerns a dispute between PIM and Defendant/Counterclaimant Beech-Nut Corporation, Inc. ("Beech-Nut") over who is financially responsible for the roughly 230,000 cases of unsold Fruit Nibbles, a brand of gummy fruit snacks manufactured by PIM to be sold under the Beech-Nut brand. The Court refers to its December 20, 2011 Letter Opinion for the relevant factual background:

1

PIM is a manufacturer of popular snack foods. Defendant sells Beech-Nut branded foods to third parties. In late 2007, the parties began discussions about producing a toddlers' all natural gummy fruit snack called Fruit Nibbles for retail under the Beech-Nut brand. Throughout the course of their dealings, the parties anticipated signing a two-year "Co-Pack" contract to govern their relationship. However, the parties were unable to agree to certain terms, and no long-term agreement was signed.

Despite having no long-term contract in place, PIM produced a sample batch of Fruit Nibbles which met Beech-Nut's color, texture and "bite" specifications. Based on approval of that sample, PIM began mass producing Fruit Nibbles in August 2008. PIM continued production until at least November 11, 2008. Through four signed Purchase Orders dated May 9, August 5, September 8, and October 13, 2008 (the "Purchase Orders"), Beech-Nut accepted and paid for approximately 230,000 cases of Fruit Nibbles.

Several provisions of those Purchase Orders bear on this matter:

1. Entire Agreement. The terms and conditions set forth in [these orders] constitute the entire agreement between the parties . . . and supersede . . . all previous verbal or written representations, agreements and conditions [unless modified in writing and signed by all parties].
. . . .
4. Quality and Inspection. [PIM] warrants that the goods . . . furnished under the order will comply with the specifications, are fit for the purpose intended, merchantable and free from defects of material and workmanship and . . . [and upon] discovery of any defect, all rejections will be returned at [PIM's] risk and expense . . . [PIM] acknowledges and agrees that [Beech-Nut] shall be entitled to all warranties and remedies as provided by the Uniform Commercial Code ("U.C.C.").

. . . .

In September 2008, Beech-Nut received its first delivery of Fruit Nibbles, which it sold to third parties. Shortly thereafter, Beech-Nut began receiving hundreds of complaints about Fruit Nibbles.

2

> Although it is unclear exactly how widespread the problems with the shipped Fruit Nibbles were, on December 5, 2008, Beech-Nut instituted a national product withdrawal of all PIM-manufactured Fruit Nibbles.
>
> From mid-January through February 2009, the parties discussed issues related to the product recall.  Beech-Nut maintained that these problems were PIM's responsibility; PIM, in turn, denied responsibility and declined to accept Fruit Nibbles returns from Beech-Nut.  The parties also discussed relaunching Fruit Nibbles in Spring 2009, but understood that any future business relationship was predicated on resolving issues related to the recall.  Ultimately, the parties did not resolve those issues and failed to "reach a co-packing or other contract relating to the prospective re-launch." (56.1 Statement ¶ 42.)  On February 23, 2009, Beech-Nut advised PIM that it was going to use alternate suppliers for Fruit Nibbles.
>
> On February 27, 2009, PIM sued Beech-Nut in Superior Court, asserting claims against Beech-Nut for breach of contract, breach of the implied covenant of good faith and fair dealing, and contract by estoppel.  On March 21, 2011, Beech-Nut removed this action to District Court, where it asserted counterclaims against PIM for negligence and for breaches of express and implied warranties under the U.C.C.

(Dec. 20, 2011 Op. at 2-4, ECF No. 34) (footnotes omitted).

On the basis of these undisputed facts, the Court granted in part and denied in part Beech-Nut's motion for summary judgment, which sought dismissal of all of PIM's claims and the granting of all of Beech-Nut's counterclaims.  Pertinently, the Court ruled that the Purchase Orders constituted the only enforceable contracts between the parties, and that their express terms governed the parties' financial responsibilities for any defective Fruit Nibbles.  In making this determination, the Court ruled that PIM's assertion that it did not provide any warranties about the shipped Fruit Nibbles was in

direct contradiction to the express language set forth in ¶ 4 of the Purchase Orders, and was barred by the Parole Evidence Rule, U.C.C. § 2-202, because the Purchase Orders were intended as a complete and exclusive statement of the terms of the parties' agreement, and were never modified by a subsequent signed writing.

The Court further held that at least some of the shipped Fruit Nibbles breached at least some of the warranties which PIM provided under the terms of the Purchase Orders. Finally, the Court dismissed PIM's Complaint in its entirety, including its breach of contract claim, "[b]ecause PIM [did] not allege that Beech-Nut breached the terms of the Purchase Orders, and those are the only enforceable contracts between the parties." (Op. at 8.)

In response to these rulings, on January 3, 2012, PIM filed the instant motion for reconsideration, asserting that Court's Letter Opinion and Order were improperly decided in two respects.  <u>First</u>, that the Court improperly dismissed PIM's breach of contract claim; <u>second</u>, that the Court improperly limited the breach of warranty defenses PIM can assert at the time of trial.

## II.   DISCUSSION

### A.   Standard of Review

A motion for reconsideration under Local Civil Rule 7.1(i) may be granted only if: (1) there has been an intervening change in the controlling law; (2) evidence not available when the Court issued the subject order has become available; or (3) it is necessary to correct a clear error of law or fact to prevent manifest injustice. *Max's Seafood Café by*

*Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

Relief by way of a motion for reconsideration is considered an "extraordinary remedy," to be granted only sparingly. *NL Indus. Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1999). A motion for reconsideration should not be treated as an appeal of a prior decision. *See Morris v. Siemens Components, Inc.*, 938 F. Supp. 277, 278 (D.N.J. 1996) ("A party's mere disagreement with a decision of the district court should be raised in the ordinary appellate process and is inappropriate on a motion for reargument." (citing *Bermingham v. Sony Corp.*, 820 F. Supp. 834, 859 n. 8 (D.N.J. 1992), aff'd, 37 F.3d 1485 (3d Cir. 1994))). It is improper for the moving party to "ask the court to rethink what it ha[s] already thought through -- rightly or wrongly." *Oritani Sav. & Loan Ass'n v. Fid. & Deposit Co.*, 744 F. Supp. 1311, 1314 (D.N.J. 1990).

> **B.     PIM Provides No Basis for the Court to Reconsider Dismissal of PIM's Complaint in its Entirety**

PIM first asserts that the Court should vacate its dismissal of PIM's breach of contract claim because "[Beech-Nut] breached [the Purchase Orders] by not making the required payments." (PIM's Recons. Br. 3, ECF No. 36.) However, PIM provides absolutely no factual support, on the record or elsewhere, to support this assertion. Because this is the first time PIM has presented this unsubstantiated allegation to the Court, it is not a proper basis for reconsideration. *P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp.*, 161 F.Supp.2d 349, 352-53 (D.N.J. 2001) ("plaintiffs' motion for

5

reargument is nothing more than an attempt to raise a matter which could have been, but was not, raised before. Because this issue is not one that was presented to, but not considered by the Court, the Court cannot consider it now."). Accordingly, PIM's motion for reconsideration on this basis will be denied.

### C. PIM Provides No Basis for the Court to Reconsider Its Rulings that Limit PIM's Breach of Warranty Defenses

PIM also moves for the Court to vacate its rulings which limit the breach of warranty defenses available to PIM at the time of trial. In support of this claim, PIM asserts that the Court: (1) improperly based its decision on certain non-U.C.C. cases, (2) failed to apply certain – and inapplicable – provisions of the U.C.C., and (3) did not base its decision on the cases cited by PIM. However, none of these assertions are a proper basis for reconsideration, nor do they affect the fundamental determinations made by the Court in this matter.

The Court wishes to be clear on what those are: The "Purchase Orders are the express contract at issue." (PIM's Recons. Br. 3.) Pursuant to ¶ 1, "[t]he terms and conditions set forth in [the Purchase Orders] constitute the entire agreement between the parties [unless modified in writing and signed by all parties]." It is undisputed that there was no signed writing which modified these agreements. Thus, pursuant to U.C.C. § 2-202, and as explained in its Letter Opinion, the Court disregarded PIM's claims that it provided no warranties about Fruit Nibbles to Beech-Nut, because that claim directly contradicted the express warranty language set forth in ¶ 4 of the Purchase Orders.

6

Because the language of the Purchase Orders governs PIM's obligations to Beech-Nut, the Court determined that PIM, in addition to other assurances of quality, expressly warranted that Fruit Nibbles would be "fit for the purposes intended [and] merchantable." (Purchase Orders, ¶ 4.) On the undisputed facts, at least some Fruit Nibbles breached those express warranties,[1] and any such defective Fruit Nibbles could be rejected by Beech-Nut and thereafter "returned at [PIM's] risk and expense." (*Id.*)

Notwithstanding these fundamental determinations – which were made only after thorough and thoughtful consideration of all of the issues in this case – PIM has raised the aforementioned arguments, all three of which amount to disagreements with the Court's legal rulings. Bearing in mind that it is improper for PIM to "ask the court to rethink what it ha[s] already thought through", *Oritani Sav. & Loan Ass'n*, 744 F. Supp. at 1314 (D.N.J. 1990), the Court will deny reconsideration on this point as well.

### III.   CONCLUSION

For the foregoing reasons, PIM's motion for reconsideration is **DENIED**. An Order follows this Opinion.

    s/William J. Martini
    **WILLIAM J. MARTINI, U.S.D.J.**

**Date: March 5, 2012**

---

[1] A sampling of the complaints about Fruit Nibbles include: "powdery coating, dried out product, shriveled appearance, moldy and wilted appearance, fermented odor, terrible smell, hard texture, choking hazard, funny taste, sour odor, wrinkled, raisin-like appearance, bitter taste, bad smell, covered with mold, horrible smell, green white, and grey coating, looks like dead toes, old, nasty, discolored, crusty, gross, rotten, stale, dry, difficult to chew, spoiled smell, horrid smell, disgusting, waxy taste, caused stomach ache, vomiting, and diarrhea, etc." (Stipulated Fact 34.)