UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PROMOTION IN MOTION, INC., PIM BRANDS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>BEECH-NUT NUTRITION CORPORATION, *a HERO GROUP CORPORATION*,<br><br>Defendant. | Civil No. 09-1228<br><br>OPINION |

    This matter comes before the Court on Defendant/Counterclaimant Beech-Nut Nutrition's ("Beech-Nut's") application for an award of pre-judgment interest. Plaintiffs/Counterdefendants Promotion in Motion, Inc. and PIM Brands, LLC (collectively, "PIM") dispute the amount sought by Beech-Nut. For the reasons set forth below, the Court will grant Beech-Nut's application and award it prejudgment interest in the amount of $289,955.18.

## I. BACKGROUND[1]

    This matter concerned a dispute between PIM and Beech-Nut over who was financially responsible for approximately 230,000 cases of unsold Fruit Nibbles, a brand of gummy fruit snacks manufactured by PIM to be sold under the Beech-Nut brand.

    For purposes of this motion, it is sufficient to note the following: Beech-Nut paid PIM for those Fruit Nibbles and began selling them at retail under the Beech-Nut brand in the Fall of 2008. After receiving a number of serious complaints from consumers and retailers, Beech-Nut withdrew all PIM-produced Fruit Nibbles from the market. Although Beech-Nut advised PIM of its decision to do so on

---

[1] A more complete history of the facts leading up to that award is set forth in the Court's December 20, 2011 Letter Opinion. (ECF No. 34.)

December 2, 2008, it is unclear when Beech-Nut formally requested reimbursement from PIM.

Through at least mid-January 2009, the parties continued to discuss who was financially responsible for the unsold Fruit Nibbles, as well Beech-Nut's desire to re-launch Fruit Nibbles with PIM, which was contingent on resolution of that issue.  Thereafter, on February 23, 2009, Beech-Nut told PIM that it was going to re-launch Fruit Nibbles without PIM.

In response, on February 27, 2009, PIM commenced a breach of contract action against Beech-Nut in New Jersey Superior Court.  On March 18, 2009, Beech-Nut removed this matter to federal court on the basis of diversity jurisdiction and asserted its own counterclaims against PIM for breach of contract.

The case was tried before a jury beginning on September 10, 2012.  Prior to trial, the Court ruled that the terms set forth in four purchase orders governed the rights and liabilities of the parties for the unsold Fruit Nibbles.  Those purchase orders contained language stating that they would "be construed in accordance with the laws of the state of New York."  (Purchase Orders, ¶ 17.)

On September 12, 2012, a jury awarded $2,222,000.00 in damages to Beech-Nut.[2]  In addition to its damages award, Beech-Nut is now seeking an award of pre-judgment interest.  There are three points of contention between the parties regarding that request.

1. Whether New York or New Jersey law governs Beech-Nut's application for pre-judgment interest.

2. The relevant time period for which the Court should award prejudgment interest.

3. Whether the Court should compound any pre-judgment interest it awards.

## II. DISCUSSION

### 1. New Jersey Law Governs Beech-Nut's Application for Pre-Judgment Interest

The parties dispute which state's pre-judgment interest law controls.  Beech-Nut asserts that based on the terms of the purchase orders, New York's prejudgment interest law, which awards a higher interest rate and affords the Court less equitable discretion, controls.  PIM, on the other hand, argues that because this matter was brought in New Jersey, New Jersey's prejudgment interest law governs.

---

[2] PIM does not challenge that validity of that amount.

A federal district court sitting in diversity applies the forum state's law with respect to prejudgment interest, even when the parties agreed to be bound by the laws of another state. *Gleason v. Norwest Mortg., Inc.*, 253 Fed. Appx. 198, 203-04 (3d Cir. 2007). *See also, De Puy v. Biomedical Engineering Trust*, 216 F.Supp. 358, 382 (D.N.J. 2001), *aff'd sub. Nom., Pappas v. De Puy Orthopaedics, Inc.*, 33 Fed.Appx. 35 (3d Cir. 2002). Thus, although the four purchase orders include language stating that are to be construed under New York law, New Jersey law governs Beech-Nut's application for an award of pre-judgment interest.

Under New Jersey law, this Court "has discretion [in a contract action] to award prejudgment interest in accordance with equitable principles." *Gleason v. Norwest Mortg., Inc.*, 253 Fed.Appx. 198, 203–04 (3d Cir.2007) at 204 (*citing County of Essex v. First Union National Bank*, 186 N.J. 46, 891 A.2d 600, 608 (2006)). As explained by the New Jersey Supreme Court in *Litton Industries, Inc. v. IMO Industries, Inc.*, 200 N.J. 372 (2009):

> "the award of prejudgment interest in a contract case is within the sound discretion of the trial court. Similarly, the rate at which prejudgment interest is calculated is within the discretion of the court. We have explained that the primary consideration in awarding prejudgment interest is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled."
>
> *Id*. at 390 (quoting *Rova Farms Resort, Inc. v. Investors Ins. Co.*, 65 N.J. 474, 506 (1974)) (internal citations omitted).

Prejudgment interest should neither be imposed as a punitive measure, *New Jersey Mfrs. Ins. Co. v. Nat'l Cas. Co.*, 393 N.J.Super. 340, 354 (App. Div. 2007), nor should it be withheld due to the unsuccessful party's "honest disputation over legal liability," *Rova Farms*, 65 N.J. at 506. *See also Unihealth v. U.S. Healthcare, Inc.*, 14 F.Supp.2d 623, 642 (D.N.J. 1998) ("The purpose of awarding prejudgment interest is to compensate the claimant for the loss of income the money owed would have earned if payment had not been delayed.").

Bearing the above considerations in mind, the Court finds that Beech-Nut is entitled to an award of pre-judgment interest in this contract action. And while equitable principles ultimately govern this Court's determination on the amount of pre-judgment interest to award, this Court looks to New Jersey Court Rule 4:42–11, which sets forth the manner for calculating awards of pre-judgment interest in tort actions and post-judgment interest generally, as a guide for calculating that amount. *Litton* at 390–91.

3

### 2. Beech-Nut is Entitled to Pre-Judgment Interest Beginning on February 27, 2009, the Date the PIM Filed Suit Against Beech-Nut

The parties disagree on the appropriate pre-judgment interest accrual date. Beech-Nut asserts that the accrual date is December 2, 2008, the date it notified PIM that it was withdrawing Fruit Nibbles from the market. PIM asserts that the accrual date is February 27, 2009, when PIM commenced suit against Beech-Nut.

Generally, the law imposes a duty to pay interest from the time payment of principal is due. *Munich Reinsurance America, Inc. v. Tower Ins. Co. of New York*, No. 09-2598, 2012 WL 1018799 (D.N.J. Mar. 26, 2012) (citing cases). However, in choosing the prejudgment interest accrual date in this matter, the Court must also be guided by equitable principles. Pressler & Verniero, Current N.J. Court Rules, comment 3.1 on R. 4:42–11 (2012) (*citing County of Essex v. First Union*, 186 N.J. 46, 61-62 (2006).

On the undisputed record before the Court, Beech-Nut informed PIM that it was withdrawing all Fruit Nibbles from the market on December 2, 2008. However, the facts do not show that Beech-Nut demanded, much less expected, full compensation on that date. Tellingly, through at least January, 2009, Beech-Nut and PIM continued to discuss working together on a Fruit Nibbles re-launch, which was contingent upon, among other things, resolving who was financially responsible for the 230,000 cases of unsold Fruit Nibbles. Furthermore, it was PIM – not Beech-Nut – who first commenced litigation when it filed its breach of contract action after Beech-Nut informed PIM that it was terminating their business relationship.

On these facts, the Court finds that February 23, 2009, the date PIM commenced suit against Beech-Nut is the appropriate accrual date. *See Munich Reinsurance*, 2012 WL 1018799 (D.N.J. Mar. 26, 2012) (accrual date was date breach of contract action was commenced in light of the following considerations: under Rule 4:42–11(iii)(b) the accrual date begins on latter of: (1) the date of suit is commenced or (2) six months after the date the cause of action arises; the goal of awarding prejudgment interest is to ensure plaintiff receives payment for money it would presumably have earned if the payment had not been delayed; and that defendant disputed the amount owed until certain questions were answered during account reconciliation process).

Accordingly, the Court will award pre-judgment interest for the period beginning on February 27, 2009 and ending on October 17, 2012, the date of entry of judgment. Pressler & Verniero, Current N.J. Court Rules, comment 1.2.2 on R. 4:42–11 (2012) (post-judgment period runs from date judgment is entered).

### 3. Compound Interest is Not Appropriate

Finally, the parties disagree on the whether Beech-Nut is entitled to earn compound interest on its prejudgment interest award.  Beech-Nut asserts that it is entitled to compound interest; PIM asserts that Beech-Nut is only entitled to earn simple interest.

Generally, in New Jersey, absent unusual circumstances, an award of prejudgment interest "shall bear simple interest."  Pressler & Verniero, Current N.J. Court Rules, comment 3.1 on R. 4:42–11 (2012).  *See also Johnson v. Johnson*, 390 N.J. Super. 269, 276 (App. Div. 2007) ("Rule 4:42-11(a) prescribes that any order to pay money bears simple interest. Admittedly, the same rule allows a judge to depart from this rule; however, compound interest is clearly the exception rather than the rule.").

Here, although Beech-Nut asserts that it is entitled to earn compound interest, it has failed to point to any unusual circumstances in this litigation which support a basis to grant such an award.  Accordingly, Beech-Nut's award of prejudgment interest will be calculated without compounding the interest.

### 4. Calculating the Amount of Pre-Judgment Interest Owed

The parties agree on the pre-judgment interest rates for 2009, 2010, 2011, 2012.[3]  Based on those rates, the Court finds that Beech-Nut is entitled to pre-judgment interest ("PJI") in the following amounts:

| Year | Interest Rate x $2,222,000 | = Annual PJI | Per Diem Rate |
|---|---|---|---|
| 2009 | 6.0%  x $2,222,000 | =$133,320 | $365.26 |
| 2010 | 3.5%  x $2,222,000 | =$77,770 | $213.06 |
| 2011 | 2.5%  x $2,222,000 | =$55,550 | $152.19 |
| 2012 | 2.5%  x $2,222,000 | =$55,550 | $152.19 |

| Year | Per Diem x Days | = PJI Owed By Year |
|---|---|---|
| 2009 | $365.26 x 308 days | = $112,500.08 |
| 2010 | $213.06 x 365 days | =$77,770.00 |
| 2011 | $152.19 x 365 days | =$55,550.00 |
| 2012 | $152.19 x 290 days | =$44,135.10 |

---

[3] Those rates are consistent with New Jersey Court Rule 4:42-11(a)(iii).

**Total PJI Owed**
**=$289,955.18**

### III.   CONCLUSION

      For the foregoing reasons, the Court will enter Judgment against PIM and in favor of Beech-Nut in the amount of $2,511,955.18, comprised of the following: $2,222,000.00 in damages and $289,955.18 in prejudgment interest.


                                          /s/William J. Martini
                                          **WILLIAM J. MARTINI, U.S.D.J.**

**Date: October 17, 2012**